[No. 3035.   March 2, 1928.]

MURPHEY SANITARIUM v. TRUSTEES OF PROPERTY OF PROTESTANT EPISCOPAL CHURCH OF NEW MEXICO.

[265 Pac. 717.]

Downer & Keleher and W. C. Cochrane, all of Albuquerque, for appellant.

Rodey & Rodey, of Albuquerque, for appellee.

OPINION OF THE COURT

PARKER, C. J.   This suit was instituted by Meta Murphey against W. T. Murphey, the Murphey Sanitarium, a corporation, hereinafter styled Sanitarium, and the Trustees of the Property of the Protestant Episcopal Church of New Mexico, a corporation, hereinafter styled Trustees.   The amended complaint upon which the case came to trial was filed May 10, 1923.   The object of the bill was to compel the specific performance of two contracts—one between Sanitarium and Trustees, and the

other between W. T. Murphey, individually, and Trustees. The former was a contract for the sale of all the properties of Sanitarium to Trustees. The latter was a contract by W. T. Murphey, individually, to purchase all of the capital stock of Sanitarium, dissolve the corporation, acquire a $50,000 promissory note which was to be given by Trustees to Sanitarium as part of the purchase price, and after thus acquiring said promissory note create a trust and endowment in favor of Trustees. The purchase price of the sanitarium properties was $70,000, and the assumption by Trustees of an existing mortgage on part of same for $20,000. The time and manner of payment and mode of securing the notes called for were fixed by the contract of sale at $2,500 in cash on the execution of the contract of sale; $7,500 in form of noninterest-bearing promissory note, payable on or before March 15, 1922; $10,000 in form of noninterest-bearing promissory note, payable on or before September 15, 1922; and $50,-000 interest-bearing promissory note, payable on or before September 15, 1965—all of said promissory notes to be secured by deed of trust on all of the property sold by Sanitarium to Trustees. The contract of sale is dated September 21, 1921, but was not executed by Trustees until November 4, 1921.

A great number of pleadings were filed in this case. Each of the defendants' filed an answer to the complaint, and also a cross-complaint praying affirmative relief. In addition, there were answers to cross-complaint and replies. It will be necessary to consider these pleadings in order to align the parties in the relief they sought.

The plaintiff, Meta Murphey, claimed an interest in the $50,000 promissory note and sought specific performance by all of the parties defendant of the two contracts, the "agreement to sell Sanitarium," and the "agreement to create trust." Additional relief was asked, but the same is immaterial to this review.

The defendant Trustees in their answer to the complaint specifically joined in the relief sought by plaintiff and then filed a cross-complaint wherein it prays specific performance by Dr. W. T. Murphey, Sanitarium and Re-

ceiver of Sanitarium, of both agreements as part of one contract.

The defendant Sanitarium and several of the stockholders thereof joined in an answer to the complaint and denied all of the allegations set forth therein and prayed for dismissal of same. They also joined in an answer to Trustees' cross-complaint, and after denying much thereof and setting forth new facts, prayed in effect that Trustees be compelled to specifically perform the "agreement to sell Sanitarium," and also for reformation of the $50,-000 promissory note so as to conform to the terms of "agreement to sell Sanitarium" and for such further relief as will insure the complete performance of said agreement to sell. Sanitarium also filed a cross-complaint, consistent with its answer, but praying for reformation of the $50,000 promissory note and the deed of trust, so that the same will comply with the terms of the "agreement to sell Sanitarium"; for judgment against Trustees in the sum of $5,600 and interest thereon; and unless said Trustees shall pay such judgment within 90 days, the court will order the property described in the "agreement to sell Sanitarium" to be sold to pay such judgment, *as in case of foreclosure.* It will be noted that the foregoing language is not a prayer for a foreclosure of the mortgage lien, but is simply a prayer to sell property in satisfaction of the judgment *as in case of foreclosure.*

Defendant Dr. W. T. Murphey files an answer to cross-complaint of Trustees wherein he denies the material allegations of same and alleges facts similar to those alleged by Sanitarium in its cross-complaint, and then prays dismissal of cross-complaint of Trustees. He does not answer the cross-complaint of Sanitarium.

It thus appears that the plaintiff, Meta Murphey, and Trustees were seeking the same general relief against Sanitarium and Dr. W. T. Murphey, and that the two latter were in harmony in their defense.

We find, however, that plaintiff's complaint was dismissed by the trial court and plaintiff has not joined in this appeal; that Trustees voluntarily dismissed their own

cross-complaint prior to final judgment, but without prejudice, as in nonsuit; that Dr. W. T. Murphey does not appear in this court either as appellant or appellee. The pleadings to be considered by this court are, therefore, cross-complaint of Sanitarium, answer of Trustees to such cross-complaint, and reply of Sanitarium.

Let us consider what issues are presented by the three foregoing pleadings.

The cross-complaint of Sanitarium, in substance, tenders the following issues: That Sanitarium and Trustees entered into one and only one agreement concerning the sale of the properties of Sanitarium, which was dated September 21, 1921, and is designated, "Agreement to Sell Sanitarium." That Sanitarium has fully complied with and carried out all of its obligations under such "agreement to sell." That Trustees have failed to carry out such agreement in that, instead of giving the $50,000 promissory note and deed of trust, as provided in said agreement, it gave a $50,000 promissory note and deed of trust conditioned upon and subject to a certain agreement, to create a trust, between Dr. W. T. Murphey, individually, and Trustees, to which latter agreement Sanitarium was not a party. That the deed of trust and promissory note were given in such changed form without authority and without knowledge or notice to Sanitarium and in violation of the terms of the "agreement to sell Sanitarium," and without legal authority, Trustees well knowing that neither it nor Dr. W. T. Murphey had any authority to make said changes. That such changes first came to the knowledge of Sanitarium about August 9, 1923. That Sanitarium has received no benefit under such deed of trust and promissory note, nor has it ratified same or the changes therein, but now specifically repudiates same and tenders the same for reformation so as to conform to the "agreement to sell Sanitarium." That Trustees have failed to pay the sum of $5,600, the balance of the down payment evidenced by the $10,000 promissory note.

Cross-complainant then prays for correction and reformation of the $50,000 promissory note and the deed of

trust, so that they will comply with and conform to the terms of the "agreement to sell Sanitarium"; for judgment against Trustees in the sum of $5,600 and interest, and upon failure to pay such judgment within 90 days, for the sale of the property described in the "agreement to sell Sanitarium," as in case of foreclosure; and for such other, further, additional, and different relief as may be justified under the allegations and proofs thereof.

The answer of Trustees to cross-complaint of Sanitarium alleges, in substance:

It denies practically all of the material allegations of the cross-complaint, except that it admits that it entered into the "agreement to sell Sanitarium," but alleges that this was not the only contract between Sanitarium and Trustees for the purchase, sale, and transfer of the property of Sanitarium to Trustees, but that as a part of the consideration of said "agreement to sell Sanitarium," and with full knowledge, consent, and sanction of all the stockholders of Sanitarium defendant entered into a contract, called "Trust Agreement," contemporaneously with "agreement to sell Sanitarium," all with full knowledge and sanction of all parties. It further alleges that prior to September 15, 1922, it tendered to Sanitarium the sum of $5,600 as shown by a certain letter accompanying said tender. It prays for no affirmative relief, but simply that the cross-complaint of Sanitarium be dismissed.

It will be well to note that the foregoing answer does not plead either estoppel or ratification, but that the two contracts, "agreement to sell Sanitarium," and "agreement to create trust" were executed contemporaneously and were a part of one transaction, that is, the sale and transfer of the properties of Sanitarium to Trustees, and that a proper tender of the amount of $5,600 due from Trustees to Sanitarium had been legally made. ·

It is apparent that the real bone of contention related to the two agreements, as to whether or not they were a part of one transaction, that is, the sale of the properties of Sanitarium to Trustees, or whether they were two distinct, disconnected agreements between different parties;

and relating to different subject-matters, and in which "agreement to create trust" Sanitarium had no interest whatever. We will therefore carefully analyze both agreements.

The "agreement to sell Sanitarium" is an agreement between the Murphey Sanitarium, a corporation, and the Trustees of the Property of the Protestant Episcopal Church in New Mexico, a corporation; recites a valuable consideration; is dated September 21, 1921; is an agreement to sell all of the properties of Sanitarium to Trustees. The purchase price to be paid is fixed at $70,000, and the assumption by purchaser of a pre-existing mortgage of $20,000 on a portion of the properties. Trustees agreed to assume the $20,000 mortgage; to make an initial payment of $20,000, of which amount $2,500 is to be paid in cash on execution of the contract; $7,500 in form of noninterest-bearing promissory note, payable on or before March 15, 1922; $10,000 in form of noninterest-bearing promissory note, payable on or before September 15, 1922, and the balance of the purchase price $50,000 in form of interest-bearing promissory note, payable on or before September 15, 1965—all said promissory notes to be secured by deed of trust on all the property sold by Sanitarium to Trustees, but subject to the prior mortgage of $20,000, and that as to such property covered by the prior mortgage the deed of trust is to be considered as a second mortgage, and as to such properties not covered by the prior mortgage the deed of trust is to be considered a first mortgage. It is further agreed that the management, control, and operation of the properties shall continue in the Sanitarium until the initial $20,000 is paid, but thereafter shall pass to Trustees; that there shall be no individual liability on the part of Trustees on any of said promissory notes; and that same must be satisfied out of the property sold. The agreement is executed by the parties and attested by the respective secretaries of the corporations.

It will be noted that the foregoing "agreement to sell Sanitarium" contains no agreement as to whether or not

the deed of trust is to contain an accelerating clause in case of default of payment of any note, interest, etc.

As a part of the foregoing agreement, and written in the body of it, we have the corporate minutes of both corporations relating to the transaction, wherein it appears that the only questions considered by either corporation were the selling and buying of Sanitarium properties, executing the agreement to sell and option above set forth in substance, and ordering and directing the proper officer to execute same as well as all other papers, necessary to carry same into force and effect. No reference whatever is made in these minutes to the "agreement to create trust" entered into between Dr. W. T. Murphey, individually, and Trustees. No authority is given concerning any matter other than the "agreement to sell Sanitarium," and no other matter or question seems to have been presented to either corporation for its consideration. The "agreement to sell Sanitarium" and the minutes clearly show that both corporations were dealing with but one agreement and one subject-matter, and that there was no misunderstanding between the parties, but a complete meeting of minds.

The "agreement to create trust" is an agreement between Dr. W. T. Murphey, individually, and Trustees, recites a valid consideration, and is dated September 21, 1921. It recites in the inducement portion that Dr. W. T. Murphey was the founder of the Murphey Sanitarium, is president and owner of the majority of its stock; that he is desirous of perpetuating the institution and inducing the trustees to purchase the same in order to perpetuate his name in connection therewith, and is desirous of assisting in raising the necessary money with which to make initial payments and also in maintaining the institution by creating a trust fund or endowment. It further recites that Trustees are desirous of taking advantage of the benevolence of Dr. Murphey, and that the Trustees have been induced by Dr. W. T. Murphey to enter into the "agreement to sell Sanitarium," and are willing to perpetuate the name of Dr. W. T. Murphey in connection therewith. The recitals in the agreement are: That upon

payment of $20,000 initial payment provided for in the "agreement to sell Sanitarium," Dr. Murphey will acquire all of the stock of Sanitarium not owned by him; that he will dissolve the corporation and thus become the owner of the $50,000 promissory note given as part of the purchase price to Sanitarium; that he will then create a trust and endowment of said $50,000 promissory note in favor of Trustees, with the condition that the Trustees are to pay annually the interest on said note in the sum of $4,000 for an uncertain period of time, dependent upon the life of Dr. Murphey, and thereafter the note shall be cancelled and the deed of trust satisfied. There are further recitals to the effect that Dr. Murphey will also acquire all of the notes of the Trustees given as a part of the purchase price of the sanitarium property, before dissolution of the sanitarium company; that he owns a majority of the stock and has binding contracts to purchase the remainder. It is then recited that the agreement shall be binding upon the executors, administrators, and assigns of Dr. Murphey. This "agreement to create trust" in no place either directly or indirectly, by inference, intendment, or otherwise, pretends to be the contract of Sanitarium, nor to in any way bind it, but on the contrary unquestionably shows that it is the individual contract of Dr. W. T. Murphey.

It is clear that the two foregoing agreements have nothing to do with each other; they are between different parties and relate to different subject-matter. One relates to the purchase of real and personal property of a corporation and prescribed the mode of payment and security for deferred payments. The other relates to the acquisition by an individual of all the stock of a corporation after certain contingencies have happened, and the creation of a trust and endowment.

Let us next consider the evidence in the case. The evidence unquestionably establishes the facts that the "agreement to sell Sanitarium" was the only contract between Sanitarium and Trustees relative to the sale and purchase of Sanitarium properties, and the only contract touching such matters ever authorized, approved, or passed upon by the governing bodies of the two corporations; that the

"agreement to create trust" was the individual contract of Dr. W. T. Murphey with Trustees and was entered into without the knowledge or consent of the directors or stockholders of Sanitarium, and without the approval or direction of the governing body of either corporation; that neither Sanitarium as a corporation, nor its directors, nor its stockholders, ever had knowledge, either direct, constructive, or imputed, of the making or existence of the "agreement to create trust" until after May 10, 1923, the date of the filing of the amended complaint; that Dr. W. T. Murphey was at no time the owner of a majority of the stock of Sanitarium, nor did he at any time have binding contracts for the purchase of the stock of said corporation owned by other stockholders; that neither Meta Murphey, nor W. T. Murphey have any interest individually in the $10,000 and $50,000 promissory notes executed by the Trustees as part of the purchase price of the sanitarium properties; that the conditions in the deed of trust and the $50,000 promissory note subjecting the same to the conditions and covenants contained in the "agreement to create trust," were written therein without the knowledge, authority, or approval, and without ratification of Sanitarium, its directors, or stockholders, and are a violation of the conditions and terms of the "Agreement To Sell Sanitarium"; that the contents of and conditions in said $50,000 promissory note and the deed of trust securing the same were concealed from Sanitarium, its directors, and stockholders by W. T. Murphey, the trustee designated in the deed of trust, said deed of trust not being recorded until August 9, 1923; that the "agreement to create trust" could only benefit Dr. W. T. Murphey, individually, and Trustees, to the detriment of Sanitarium and its stockholders; that if a fraud was perpetrated by Dr. W. T. Murphey upon either or both of the corporations, then the Trustees by their action aided and assisted therein and were parties thereto; that all promissory notes given as part of the purchase price of sanitarium property were to be secured by deed of trust on all of the property sold; that deed of trust contains an accelerating clause as to maturity of the $50,000 promissory note; that there was past due $5,600 of the $10,000 promissory note;

and that Trustees had not paid or legally tendered such $5,600 to Sanitarium.

We have carefully considered only such findings of fact made by the trial court, upon which error is predicated, as have been argued and briefed by appellant.

In this connection we must bear in mind that appellee in its cross-complaint pleads that certain conditions subjecting the $50,000 promissory note and deed of trust securing same to the conditions of the "agreement to create trust" were inserted therein, unlawfully and without authority and in violation of the terms of the "agreement to sell Sanitarium." No allegation is made that anything has been left out of the deed of trust which should have been contained therein, such as the inclusion of the $7,500 and $10,000 promissory notes and the personal property sold.

The relief prayed is for reformation only as to the $50,000 promissory note and the deed of trust, in so far as they recite the unauthorized condition, the object of the reformation being to eliminate such conditions. Judgment is prayed for $5,600, the balance due on the $10,000 promissory note and interest thereon, and for sale of all the property described in the "agreement to sell Sanitarium" in event the judgment is not paid within 90 days, but no judgment is prayed on the $50,000 note, nor for foreclosure of the deed of trust after reformation of same. It appears that the $50,000 note was not due, and that no interest thereon was due until September 15, 1923; the cross-complaint was filed August 31, 1923. It is therefore evident that the cross-complaint could not properly ask for judgment on the $50,000 promissory note upon any theory.

The trial court correctly held, under the issues and evidence, that Sanitarium was not bound by the "agreement to create trust," either as a party to it or as a result of estoppel, ratification, or acquiescence; that the same was no part of the "agreement to sell Sanitarium," and was the separate and individual contract of Dr. W. T. Murphey; that the only contract between Sanitarium and Trustees as to the sale of the Sanitarium property was the

"agreement to sell Sanitarium"; that appellee was entitled to reformation of the $50,000 promissory note and deed of trust; that the alleged tender of $5,600 was not a legal tender; and that appellee was entitled to a judgment against Trustees for the sum of $5,600 and interest thereon from September 15, 1922. The trial court, however, in its final decree went far beyond this. It evidently treated the deed of trust and $50,000 promissory note as completely reformed in all respects so as to conform to the "agreement to sell Sanitarium," adding to it an acceleration clause, which was not provided for in the "agreement to sell," so that the deed of trust as reformed secured all of the promissory notes with all of the property, both real and personal. The court did not enter a separate order in the final decree specifically reforming the deed of trust and note, but it evidently proceeded upon the theory that the deed of trust and note should be reformed, and considered the deed of trust reformed as though the provisions of the "agreement to sell Sanitarium" were written in said deed of trust. After such reformation it gave judgment for $55,600 and interest, presumably on the theory either that the failure to pay the $5,600 part of the $10,000 promissory note, or to pay the $4,000 interest on the $50,000 promissory note, constituted a default and matured the entire indebtedness secured by the reformed deed of trust, and then ordered foreclosure sale of all the properties, both real and personal, in case the judgment be not paid within 90 days.

Neither the pleadings nor the evidence support or permit such a decree. It was foreign to the issues in the case and relief prayed for; was unsupported by evidence or proper findings; nothing was due upon the $50,000 promissory note at the time the cross-complaint was filed. No supplemental cross-complaint was filed to include the $50,000 promissory note after interest became due thereon. No foreclosure of the reformed deed of trust was prayed for. No judgment on the $50,000 note was asked for. No sale of the real and personal property under foreclosure proceedings was sought. It is too apparent to require the citation of authorities that the court was without jurisdiction to enter the decree it did.

These questions were presented to this court by assignments of error Nos. 14 and 17, based upon objections to findings of fact Nos. 5 and 11, and were fully argued and briefed by both counsel, but the error is such that if presented for the first time on appeal we would be compelled to set the judgment aside.

It is not necessary, however, that this case be remanded for a new trial; the judgment of the lower court can be set aside and the proper judgment entered.

Judgment is therefore reversed and the cause remanded, with instructions to enter judgment in favor of the Murphey Sanitarium, a corporation, and against the Trustees of the Property of the Protestant Episcopal Church of New Mexico, a corporation, in the sum of $5,600 and interest thereon at 6 per cent. per annum from September 15, 1922, until paid, and that if not paid execution be limited as provided in the promissory note dated Albuquerque, N. M., November 4, 1921, for the sum of $10,-000, and executed by the Trustees and payable to Sanitarium; that the $50,000 promissory note and deed of trust given to secure same be reformed to the extent only as specifically prayed for in appellee's cross-complaint, and it is so ordered.

BICKLEY and WATSON, JJ., concur.